O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARAMARZ NAEIM, | ) Case No.  2:19-cv-06126-DDP (AFMx) |
| | ) |
| Plaintiff, | ) **ORDER GRANTING** |
| | ) **DEFENDANT'S MOTION FOR** |
| v. | ) **SUMMARY JUDGMENT** |
| | ) |
| DENIS R. MCDONOUGH, in his Official | ) [Dkt. 62] |
| Capacity, Secretary, Department of | ) |
| Veterans Affairs, and DOES 1 through | ) |
| 10, | ) |
| Defendants. | ) |
| | ) |
| | ) |

Presently before the court is a Motion for Summary Judgment, filed by Defendant Denis R. McDonough, in his Official Capacity, Secretary, Department of Veterans Affairs ("Defendant").  (Dkt. 62.)  Having considered the submissions of the parties and having heard oral argument, the court GRANTS the motion, and adopts the following Order.

///

///

1
2
3
4
5
6

**I. BACKGROUND**

Dr. Faramarz Naeim ("Plaintiff") worked for Defendant as a staff pathologist at the VA Greater Los Angeles Healthcare System (the "VA") for approximately thirteen years, until Plaintiff was 78 years old. (Dkt. 83, Naeim Declaration ("Decl.") ¶ 1.) Plaintiff specialized in hematopathology, which involves the diagnosis, evaluation, and analysis of blood-related disorders. (*Id.* ¶ 3.)

7
8
9
10
11

In January 2018, Dr. Michael Lewis became acting chief of the pathology department at the VA, and Plaintiff's direct supervisor. (Dkt. 65-1, Ex. H, Lewis Depo. at 42:15-17.) Lewis reported to the Chief of Pathology and Laboratory Services for the Veteran Integrated Service Network 22 ("VISN"),[1] Dr. Jessica Wang-Rodriguez. (*Id.*, Ex. M, Wang-Rodriguez Depo. at 7:11-15; *id.*, Ex. K, Toney Depo. at 25:4.)

12
13
14
15
16
17

Between 2016 and 2018, the VA's pathology department experienced staffing shortages. (Dkt. 65-1, Ex. K, Toney Depo. at 126:20-127:9; *id.*, Ex. M, Wang-Rodriguez Depo. at 142:13-16, 248:2-11; *id.*, Ex. H, Lewis Depo. at 89:23-90:24; *id.* Ex. I, Ulirsch Depo. at 255:2-13.) By January 2018, there were a total of five full-time staff pathologists within the department, including Plaintiff. (*Id.*, Ex. K, Toney Depo. at 260:21-261:12; *id.*, Ex. H, Lewis Depo. at 346:5-16.)

18
19
20

On January 22, 2018, Dr. Lewis implemented a plan to proctor all department pathologists in three service areas: autopsies, cytology, and frozen sections. (*Id.*, Ex. H, Lewis Depo. at 342:19-22; *see also* Dkt. 65-2, Ex. GG-II.)[2] Up to this point in time,

21
22

23
24
25

[1] VISN 22 is an office that manages VA hospitals in a particular geographical region. (Dkt. 65-1, Ex. A, Brown Depo. at 23:25-24:4.) VISN 22 includes the Greater Los Angeles VA. (*Id.*)

25
26
27

[2] Proctoring typically involves the observation and evaluation of a new pathologist or pathologist acquiring new skills (the "proctee"), by a physician already competent and privileged in a particular service area (the "proctor"). The proctor and proctee assume such roles until the proctor is satisfied that the proctee has gained knowledge sufficient

28

Plaintiff's job assignments at the VA were limited to hematopathology cases. (Dkt. 84-1, Ex. CCCCC at 6:16-20; *id.*, Ex. DDDDD at 2:12-5:17.) In response to Dr. Lewis' first proctoring request, Plaintiff told Dr. Lewis that he was concerned with performing services outside of hematopathology. (*Id.*, Ex. GG.) Plaintiff said that Dr. Wang-Rodriguez had previously requested that he perform other services, and that when he voiced similar concerns regarding his competency in those areas, Dr. Wang-Rodriguez withdrew her request. (*Id.*) Plaintiff also stated that although he was a "board-certified AP/CP pathologist," he had not practiced in certain areas of pathology "since [his] residency training program and after [he] obtained [his] boards in 1973." (*Id.*) In response, Dr. Lewis told Plaintiff that all staff pathologists would "receive proctoring and support" as well as the "full support and resources to succeed." (*Id.*) On the same day, Dr. Lewis informed Plaintiff that his work schedule would change starting February 5, 2018. (Dkt. 65-2, Ex. BB.) Prior to the change, Plaintiff was the only staff pathologist with a modified schedule. (Dkt. 65-1, Ex. H, Lewis Depo. at 228:25-229:24, 341:8-15; *id.*, Ex. G, Naeim Depo. at 118:6-13.)

On January 24, 2018, Plaintiff complained to Chief of Staff, Dr. Scotte Hartronft, and Dr. Wang-Rodriguez, regarding Dr. Lewis' proctoring-related requests and Dr. Lewis' decision to change Plaintiff's schedule. (*Id.*, Ex. CC.) Plaintiff stated that he believed his change of schedule was "retribution with the goal of intimidating and harassing" because he had voiced his concerns about Dr. Lewis' proctoring plan. (*Id.*) Plaintiff also requested that he be removed from Dr. Lewis' supervision and re-assigned to another supervisor, until the "issues [were] investigated and resolved." (*Id.*) In response, Dr. Wang-Rodriguez informed Plaintiff that "the needs of the service changed" and that the adjustment to his schedule was "necessary." (*Id.*) She also stated that there

to independently interpret the diagnosis, and until the proctor feels the proctee is competent. (Dkt. 65-1, Ex. M, Wang-Rodriguez Depo. at 199:8-20.)

1   were "challenges" due to "recent turnover of staff pathologists" and that Dr. Lewis was

2   "trying very hard to get all the areas of pathology covered while . . . recruiting for

3   additional pathologists."  (*Id.*)  Dr. Wang-Rodriguez acknowledged that Plaintiff's

4   "primary role [was] hematopathology"; "[h]owever, given the diminished hemepath

5   caseload overtime, [they] need[ed] to identify other duties as assigned by [Dr. Lewis] to

6   justify a full time appointment."  (*Id.*)

7        On January 29, 2018, Dr. Lewis issued Plaintiff a "Proposed Reprimand" on the

8   basis that Plaintiff had not attended a mandatory department faculty meeting a year

9   earlier.  (Dkt. 83-2, Ex. PP at VA00003615; *id.*, Ex. QQ at VA00003617-3619.)  Although Dr.

10  Lewis upheld the reprimand, it is undisputed that the reprimand was never effectuated.

11  (*See id.*, Ex. RR.)  On January 31, 2018, Plaintiff went on medical leave, which he argues

12  constituted a constructive discharge.  (Dkt. 69, Opp. at 24; Dkt. 65-1, Naeim Depo. at

13  260:19-261:4.)

14       On February 8, 2018, Plaintiff sent Dr. Hartronft a second complaint concerning

15  Plaintiff's grievances with Dr. Lewis.  (Dkt. 83-2, Ex. TT at VA004845-46.)  Plaintiff stated

16  that he believed Dr. Lewis' "requests to perform services outside [the scope of his

17  practice] [were] intended to make [Plaintiff] resign or retire."  (*Id.* at VA004846.)

18  Moreover, Plaintiff mentioned that he had "filed a harassment complaint to the Office of

19  Resolution Management."  (*Id.*)

20       By March 1, 2018, Dr. Wang-Rodriguez and Dr. Lewis became aware that Plaintiff

21  had initiated an EEO complaint against the VA and had named Dr. Lewis as a

22  responding management official.  (*Id.*, Ex. YY at VA00003728.)  On April 19, 2018,

23  Plaintiff filed a formal EEO complaint for age discrimination, harassment, and retaliation,

24  based on the events above.  (Dkt. 83-3, Ex. KKK.)

25       On May 3, 2018, Defendant determined that Plaintiff had violated the VA's policy

26  by allowing his California medical license to expire.  (Dkt. 65-1, Ex. V, Termination

27

28                                              4

Letter.)  As relevant here, Defendant's licensing policy is set forth in "VA Handbook 5021."  The licensing policy provides, in relevant part that,

> Employees are responsible for maintaining all qualifications required for appointment and for providing evidence of these qualifications, e.g., fully and unrestricted licensure in a State, when requested.  An employee who fails to meet or who fails to present evidence of meeting statutory, e.g., 38 U.S.C. 7402, or regulatory requirements for appointment will be separated.

(Dkt. 65-1, Ex. S.)

On April 30, 2018, the Credentialing and Licensing Office informed Dr. Lewis that Plaintiff had not renewed his California medical license, which expired that day.  (*Id.*, Ex. U at VA00003923.)  After several email exchanges between Dr. Lewis and the Credentialing Office, Dr. Hartronft, who was also included on the email thread, stated that Plaintiff's expired license needed to be reported to Human Resources ("HR") "immediately" because he believed that a physician was "automatically removed from employment without any active license."  (*Id.* at VA00003921.)  Several other individuals were included on this email thread, including Dr. Wang-Rodriguez and HR staff.  (*Id.*)  At some point later, Dr. Lewis checked the Medical Board of California website and verified that, as of April 30, 2018, Plaintiff had not paid his licensing renewal fee.  (*Id.*, Ex. H, Lewis Depo. at 277:9-14.)  On May 1, 2018, Dr. Lewis proposed that Plaintiff be terminated "[a]s this [was] a condition of employment at the VA."  (*Id.*, Ex. T at VA00003921.)

After verifying the lapse on the California Medical Board's website and waiting a day to make sure the website was updated, HR Specialist, Don Heuman, prepared Plaintiff's termination letter.  (*Id.*, Ex. C, Heuman Depo. at 40:14-20, 50:8-12, 52:13-16, 52:17-53:8, 53:23-54:2, 84:3-5, 102:6-16; *id.* Ex. D, Heuman Depo. at 227:2-12, 235:2-12.)  On May 2, 2018, Mr. Heuman presented the letter to VA Medical Director, Ann Brown for her review.  According to Defendant, Ms. Brown was the only VA employee authorized

5

to make termination decisions.  (Ex. 63-3, Ex. C, Heuman Depo. at 55:23-56:7.)  After

confirming that Plaintiff's license had lapsed, Ms. Brown signed Plaintiff's termination

letter, for failure to maintain an active, current, full, and unrestricted license.  (*Id.*, Ex. A,

Brown Depo. at 41:7-42:13, 45:4-10, 46:16-19, 50:9-12; Ex. D, Heuman Depo. at 205:17-

206:1; Ex. V, Termination Letter.)  The termination letter was mailed to Plaintiff that same

day.  (*Id.*, Ex. V; Heuman Depo. at 179:17-19.)  Plaintiff received the termination letter on

May 3, 2018, and paid his renewal fee on May 4, 2018, which then reactivated his license.

(*Id.*, Ex. G, Naeim Depo. at 57:10-23, 62:6-64:4.)  Shortly thereafter, Plaintiff opted to retire

in lieu of his termination.  (*Id.*, Ex. C, Heuman Depo. at 178:3-15, 179:20-180:17; Ex. D,

Heuman Depo. at 206:10.)

On July 16, 2019, Plaintiff filed suit against Defendant, alleging that he "was

unlawfully discriminated against, harassed, subjected to a hostile work environment,

retaliated against and forced into retirement[,]" in violation of the Age Discrimination in

Employment Act ("ADEA").  (*See generally* Dkt. 16, First Amended Complaint.)

Defendant now moves for summary judgment, or alternatively, partial summary

judgment with respect to all of Plaintiff's claims. (Dkt. 62, Mot.)

**II. LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show "that

there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the

initial burden of informing the court of the basis for its motion and of identifying

portions of the pleadings and discovery responses that demonstrate the absence of a

genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All

reasonable inferences from the evidence must be drawn in favor of the nonmoving party.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986).  If the moving party does not

bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate

1
2
that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

3
4
5
6
7
8
9
10
11
12
13
Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

14
15
16
17
18
19
It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

20
**III. DISCUSSION**

21
22
**A. Age Discrimination Under the Age Discrimination in Employment Act ("ADEA")**

23
24
25
26
27
The ADEA makes it unlawful for an employer to "fail or refuse to hire or . . . discharge any individual [who is at least forty years old] or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff contends that he was subjected to disparate treatment based on his age. Under a

28
7

"disparate treatment" theory of discrimination, a plaintiff in an ADEA case must produce evidence that gives rise to an inference of unlawful discrimination, either through direct evidence of discriminatory intent or through the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003); *Diaz v. Eagle Produce Ltd. P'ship*, F.3d 1201, 1207 (9th Cir. 2008).

### 1. Direct Evidence

"Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted) (alteration in original). In the context of an ADEA claim, direct evidence "is defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004) (citation, internal quotation marks, and ellipses omitted). Moreover, the direct evidence "must be evidence directly tied to the adverse employment decision." *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015).

Plaintiff cites to several remarks about his age by Dr. Wang-Rodriguez, Plaintiff's second-level supervisor, as direct evidence of discriminatory intent. (*See* Dkt. No. 84-1, Ulirsch Depo. at 97:23-98:1; 128:22-24-129:13; 136:4-18.) Plaintiff's former supervisor, Dr. Rudolf Ulirsch, testified that Dr. Wang-Rodriguez "frequently" stated that Plaintiff "should retire," and that he was "old." (Dkt. 84-1, Ex. SSSSS, Ulirsch Depo. at 97:12-98:1; Dkt. 65-1, Ex. J, Ulirsch Depo. at 154:6-17.) Viewing Plaintiff's evidence in the light most favorable to him, such comments demonstrated Dr. Wang-Rodriguez's discriminatory attitude or motive toward the class protected by the ADEA.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

However, Plaintiff has not demonstrated that such discriminatory attitude or motive played a significant or substantial role in Defendant's termination, the adverse employment action underlying Plaintiff's age discrimination claims.  More specifically, Plaintiff has not offered evidence such that a reasonable jury could conclude that the true reason for Plaintiff's termination was because of Dr. Wang-Rodriguez's discriminatory attitude or motive.  Plaintiff does not show that Dr. Wang-Rodriguez made any comments about his age when the licensing issue was discussed between upper management and HR.  The evidence does not show that Dr. Wang-Rodriguez was meaningfully involved in the decision-making process.[3]  Dr. Hartronf, not Dr. Wang-Rodriguez, initially acknowledged that Plaintiff's expired license needed to be reported to HR because he believed it warranted automatic separation.  Moreover, Plaintiff has not offered evidence to show that Ms. Brown's decision was influenced by Dr. Wang-Rodriguez' discriminatory animus for Plaintiff.  Although Plaintiff has submitted some evidence to illustrate Dr. Wang-Rodriguez's general discriminatory attitude or motive toward Plaintiff during his employment, he has not met his burden to show that her discriminatory attitude or motive played a significant or substantial role in his termination.  *See France*, 795 F.3d at 1173.

18

2.   The *McDonnell Douglas* Test

19
20

Plaintiff's age-discrimination claim may also survive summary judgment if Plaintiff can establish a *prima facie* case under the ADEA either through direct evidence of

21
22
23
24
25
26
27

[3] Plaintiff's evidence concerning Dr. Wang-Rodriguez's involvement is also weak.  The only evidence Plaintiff offers shows that on May 1, 2018, Dr. Wang-Rodriguez reached out to the HR Department for the VISN to obtain further guidance on Plaintiff's medical license issue and proposed removal.  In fact, a member of HR confirmed that unless there was a delay by the State Licensing Board, "maintaining a valid unrestricted license is a condition of employment" and that Plaintiff "should be released from federal service immediately for failure to meet the condition of employment."  (Dkt. 92-1, Ex. JJJ at VA002423.)

28

discriminatory intent or circumstantially that he was: "(1) at least forty years old; (2) [he]

performing his job satisfactorily; (3) discharged, and (4) either replaced by substantially

younger employees with equal or inferior qualifications or discharged under

circumstances otherwise 'giving rise to an inference of age discrimination.'" *Diaz*, 521

F.3d at 1207.  "An inference of discrimination can be established by showing the

employer had a continuing need for the employee['s] skills and services in that their

various duties were still being performed . . . or by showing that others not in their

protected class were treated more favorably." *Sheppard v. David Evans and Assoc.*, 694

F.3d 1045, 1049-50 (9th Cir. 2012) (quoting *Diaz*, 521 F.3d at 1207-08).

Here, the undisputed facts show that Plaintiff was 78 years old at the time of his

termination.  (Dkt. 83-4, Ex. AAAA.)  Thus, the first and third element of Plaintiff's *prima*

*facie* case are satisfied.  However, Defendant disputes whether Plaintiff has established

the remaining two elements: (2) whether Plaintiff was performing his job satisfactorily;

and (4) whether he was replaced by a younger employee or other circumstances giving

rise to an inference of age discrimination.

            i.        Element (2): Job Performance

Defendant argues that Plaintiff cannot show that he was satisfactorily performing

his job.  Defendant reasons that Plaintiff committed a major policy violation leading to

his termination—namely, that Plaintiff allowed his California medical license to expire.

(Mot. at 12:9-10.)  However, this Court agrees with the view that, as one court within this

circuit concluded, "an employee's violation of company policy cannot alone establish

failure to perform." *Lopez v. Delta Air Lines, Inc.*, No. CV 16-4497 DSF (AJWx), 2017 WL

6520612, at *4 (C.D. Cal. July 31, 2017) (citing *Diaz*, 521 F.3d at 1208).[4]  Thus, the court

finds Defendant's argument premature at this stage of the *McDonnell Douglas* test.

---

[4] To find Defendant's "nondiscriminatory reason" as a predicate for finding that Plaintiff
failed to make a *prima facie* case improperly imports the later stages of the *McDonnell*

10

1    Plaintiff offers evidence demonstrating that he was performing satisfactorily at the

2  time of his termination.  Plaintiff's evidence shows he was "consistently rated as

3  'outstanding' or 'highly satisfactory' on [his] yearly performance reviews . . . for clinical

4  services and teaching."  (Dkt. 83-1, Ex. I.)  The performance review, dated December 7,

5  2017, rates Plaintiff as "outstanding" in all measured categories.  (*Id.*)  Moreover, Plaintiff

6  was neither disciplined nor received a single complaint from his supervisors, staff

7  pathologists, clinicians or pathology residents regarding his service or behavior prior to

8  Dr. Lewis becoming Plaintiff's supervisor in January 2018.  (Dkt. 84-1, Ex. EEEEE at 2:8-

9  20; Ex. PPPPP, Naeim Depo. at 126:16-20, 296:18-19.)  The court is satisfied that such

10  evidence is sufficient to establish, for purposes of considering Defendant's summary

11  judgment motion, that Plaintiff was performing his job satisfactorily.  *See, e.g.*, *Dominick v.*

12  *Wal-Mart Stores, Inc.*, CV 13-8247-PCT-JAT, 2015 WL 1186229, at *5 (D. Ariz. Mar. 16,

13  2015) (finding that a satisfactory performance review alone provides adequate, *prima facie*

14  evidence of satisfactory performance).  Accordingly, Plaintiff has met his burden on this

15  element.

16    ii.    Element (4): Inference of Age Discrimination

17    Next, the fourth element in establishing a *prima facie* case requires Plaintiff to show

18  that Defendant replaced him with a substantially younger employee with equal or

19

20

21  *Douglas* inquiry into the initial *prima facie* stage.  If the court were to give credence to
Defendant's argument, then an employee who has violated company policy could never

22  enjoy the opportunity to rebut Defendant's nondiscriminatory reason and show
discrimination.  The Sixth Circuit's reasoning in *Cline v. Catholic Diocese of Toledo*, 206 F.3d

23  651, 663 n.7 (6th Cir. 2000) is highly informative.  The court concluded that at the

24  summary judgment stage, as in trial, the court should reserve the question of whether the
plaintiff was "qualified" until the "production stage."  *Id.* (quoting *St. Mary's Honor Ctr.*

25  *v. Hicks*, 509 U.S. 502 (1993)).  Thus, "whether . . . a plaintiff makes a prima facie case

26  must be ascertained by weighing the plaintiff's evidence that [he] was meeting [his]
employer's legitimate expectations, not by considering the nondiscriminatory reasons

27  produced by the defendant as its reason for terminating him."  *Id.* at 662.

28    11

1   inferior qualifications or that he was terminated under circumstances otherwise giving

2   rise to an inference of discrimination.  Shortly after Plaintiff's termination, Defendant

3   hired hematopathologist Dr. Jacob Pilley, who is over forty years younger than Plaintiff.

4   (Dkt. 84-1; Ex. LLLLL, Wang-Rodriguez Depo. at 123:13-23; *id.*, Ex. DDDDD at 9:1-9.)  Dr.

5   Pilley was the only pathologist providing hematopathology services after Plaintiff.  (*id.*,

6   Ex. LLLLL, Wang-Rodriguez Depo. at 125:8-11.)  Further, Dr. Pilley was "fresh out of

7   fellowship." (*id.*, Ex. RRRRR, Kletecka Depo. at 136:12-13.)  Drawing all inferences in the

8   light most favorable to Plaintiff, the evidence supports the inference that Plaintiff was

9   replaced by a pathologist of equal or inferior qualifications.  Accordingly, Plaintiff has

10  met his minimal burden for this element, and therefore also, his *prima facie* case under the

11  ADEA.

12                          3.   Defendant's Legitimate, Nondiscriminatory Reason

13          By making his *prima facie* case, Plaintiff raises a rebuttable presumption that

14  Defendant violated the ADEA.  *See Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248,

15  254 (1981).  "Once a *prima facie* case has been made, the burden of production shifts to the

16  defendant, who must offer evidence that the adverse action was taken for other than

17  impermissibly discriminatory reasons."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th

18  Cir. 1994) (citing *Burdine*, 450 U.S. at 254).  In other words, Defendant must "offer a

19  legitimate nondiscriminatory reason for [Plaintiff's] termination."  *Id.* at 892.  Defendant's

20  burden at this stage is minimal: it is one of production, not persuasion.  *Hawn v. Exec. Jet*

21  *Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

22          Defendant contends that Plaintiff was terminated for a legitimate,

23  nondiscriminatory reason—namely, for failing to maintain an unrestricted California

24  medical license pursuant to the VA's licensing policy.  "Several courts have recognized

25  that violation of company policy is a legitimate, nondiscriminatory reason for

26  terminating an employee."  *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1169-70

27  (C.D. Cal. 2013) (collecting cases); *see also Earl v. Nielsen Media Research, Inc.*, 658 F.3d

28                                                    12

1108, 1112 (9th Cir. 2011) (finding that the defendant "articulated a legitimate, nondiscriminatory reason for [the plaintiff's] termination by pointing to her multiple violations of company policy").  Here, the VA's licensing policy provides, in relevant part, that an "employee who fails to meet or who fails to present evidence of meeting the statutory, e.g., 38 U.S.C. 7402, or regulatory requirements for appointment will be separated."[5]  Plaintiff was only licensed in the state of California.  And under California law, physicians must "pay the full biennial renewal fee at the time of license renewal [i.e., prior to the license expiration date]" to have an "active, current license."  (Dkt. 84-1, Ex. FFFFFF.)  Plaintiff did not pay his renewal fee by April 30, 2018, the date his license expired.  According to Defendant, because Plaintiff did not do so until May 4, 2018, Plaintiff's license fell into "delinquent" status for four days, thus restricting his ability to practice medicine in California during that period, in violation of the VA's licensing policy.  (*See* Dkt. 84-1, Ex. YYYYY.)  As such, Defendant has satisfied its burden by offering a legitimate, nondiscriminatory reason for Plaintiff's termination.  The burden thus shifts back to Plaintiff to show that Defendant's stated reason is pretextual.

### 4.  Pretext

Because Defendant has met its burden of providing a legitimate, nondiscriminatory reason for terminating Plaintiff, "the presumption [of unlawful discrimination] created by the *prima facie* case [ ] disappears."  *Dominick*, 2015 WL 1186229, at *6 (quoting *Wallis*, 26 F.3d at 892) (alteration in original).  "A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable."  *Earl v. Nielsen Media Research, Inc.*,

---

[5] Federal law requires physicians to be "licensed to practice medicine, surgery, or osteopathy in a State."  38 U.S.C. § 7402.

13

658 F.3d 1108, 1112-13 (9th Cir. 2011). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). Where evidence of pretext is circumstantial, rather than direct, the plaintiff must produce "specific" and "substantial" evidence "to create a triable issue with respect to whether the employee intended to discriminate on the basis of [age]." *Id.* at 1222.

Plaintiff contends that Dr. Wang-Rodriguez's comments constitute direct evidence that the reasons for Plaintiff's termination were pretextual. However, as discussed above, these comments were not directly tied to Plaintiff's termination. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir. 1996). Plaintiff also has not offered any circumstantial evidence to contradict that the reason for his termination was legitimate and nondiscriminatory. There is no evidence to suggest that anyone other than Ms. Brown had authority to make the decision to terminate Plaintiff. There is no evidence to suggest that Ms. Brown had, on a separate occasion, enforced the policy differently by choosing a less punitive measure of discipline, other than immediate termination. Whether Ms. Brown had discretion to terminate Plaintiff for allowing his license to expire may have been a key issue to consider at trial, had the evidence existed on this record. Plaintiff's own interpretation of the policy and what he thought should happen in terms of discipline, however, do not create a triable issue of fact. Moreover, Plaintiff offers no evidence to suggest that Ms. Brown knew anything about Plaintiff when she was asked to review the grounds for his termination, including how old he was, or whether any of Plaintiff's colleagues wanted to terminate him because of age-based animus.

Because Plaintiff has not produced sufficient direct evidence, or "specific" and "substantial" circumstantial evidence of pretext, Plaintiff's age discrimination claim fails.

///

14

1

2

**B.  Hostile Work Environment**

Next, Defendant moves for summary judgment against Plaintiff's claim that he

3

was subjected to a hostile work environment in violation of the ADEA.  To establish a

4

*prima facie* hostile work environment claim, Plaintiff must demonstrate he was "(1)

5

subjected to verbal or physical conduct because of his age, (2) the conduct was

6

unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the

7

conditions of plaintiff's employment and create an abusive working environment."  *Juell*

8

*v. Forest Pharmaceuticals, Inc.*, 456 F. Supp. 2d 1141, 1157 (E.D. Cal. 2006) (internal

9

quotations and brackets omitted).

10

A hostile work environment claim is based upon the cumulative effect of

11

individual acts that may not themselves be actionable.  *Nat'l R.R. Passenger Corp. v.*

12

*Morgan*, 536 U.S. 101, 115-16 (2002).  In determining whether a hostile work environment

13

claim exists that is actionable, the court looks to all the circumstances, including:

14

frequency of discriminatory conduct; its severity; whether it is physically threatening or

15

humiliating, or merely an offensive utterance; and whether it unreasonably interferes

16

with an employee's work performance.  *Id.*

17

Plaintiff points to several interactions involving himself, Dr. Lewis and Dr. Wang-

18

Rodriguez, as evidence of an abusive working environment.  Plaintiff's evidence

19

indicates that when Dr. Lewis became Plaintiff's supervisor in January 2018, Dr. Lewis

20

informed all staff pathologists, including Plaintiff, that they would begin proctoring in

21

three service areas.  In response to Dr. Lewis' requests, Plaintiff stated that he did not feel

22

competent to perform services in the areas outside of hematopathology.

23

On the same day, Dr. Lewis also informed Plaintiff that he was changing Plaintiff's

24

schedule, which happened to match the schedules of the other department pathologists.

25

Subsequently, Plaintiff complained to Dr. Hartronft and Dr. Wang-Rodriguez about his

26

schedule change and Dr. Lewis' proctoring plan.  Plaintiff stated that Dr. Lewis' decision

27

"suggest[ed] that his intention was retribution with the goal of intimidating and

28

15

1
2
3
4
5
6
7
8

harassing [him] to go along with his plan."  Plaintiff also stated that his interactions with

Dr. Lewis caused him stress and "negatively affected both [his] physical and mental

health."  Plaintiff further requested that he be removed from Dr. Lewis' supervision and

reassigned to another supervisor.  In response, Dr. Wang-Rodriguez explained that due

to "recent turnover of staff pathologists," the department "need[ed] all hands on deck . . .

and [Plaintiff's] full cooperation and contribution to the department," and that "given the

diminished hemepath caseload overtime, [the department] need[ed] to identify other

duties as assigned by [Dr. Lewis] to justify a full time appointment."

9
10
11

Several days later, Dr. Lewis sent Plaintiff a notice of "Proposed Reprimand" for

failing to attend a "mandatory VA GLA Pathology Department Faculty meeting on

January 24, 2017."  The reprimand was ultimately not effectuated.

12
13
14
15
16
17

A week later, Plaintiff voiced a second complaint to Dr. Hartronft, stating that Dr.

Lewis' requests constituted "coerced malpractice" and was a "strategy to make [him]

resign or retire" given that he had communicated that he was no longer competent in

these areas.  Plaintiff also stated that he had filed a harassment complaint to the Office of

Resolution Management and was entitled to protection under the Department of

Veterans Affairs Accountability and Whistleblower Act of 2017.

18
19
20
21
22
23
24
25
26
27

To summarize up to this point, over the course of one week, Dr. Lewis instructed

Plaintiff to begin proctoring in pathology services outside of his specialty, modified his

schedule, and issued a "Proposed Reprimand," which the undisputed evidence shows

was never effectuated.  Moreover, in response to Plaintiff's complaints, Dr. Wang-

Rodriguez explained that due to staffing issues, the department needed his "full

cooperation and contribution," and that his workload needed to increase to justify a full-

time position.  Although the actions about which Plaintiff complains could be construed

as harsh and unpleasant, such conduct does not show that Plaintiff's workplace was

"sufficiently permeated with discriminatory intimidation, ridicule, and insult . . . ," *Harris*

*v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), such that it was "subjectively and objectively"

28

abusive. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). Plaintiff also has not demonstrated that such acts were age-related.

Because Plaintiff has not raised a genuine issue of material fact as to whether his harassment was based on age, the court finds that Plaintiff's claim based on hostile work environment fails as a matter of law.

### C. Constructive Discharge

Plaintiff alludes briefly in his moving papers to a constructive discharge theory. "Constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). To prove a constructive discharge claim, "a plaintiff must show there are triable issues of fact as to whether a reasonable person in his position would have felt that [he] was forced to quit because of intolerable and discriminatory working conditions." *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1184 (9th Cir. 2005), *as amended by*, 433 F.3d 672 (9th Cir. 2006) (internal quotation marks and citations omitted).

The standard to prove a constructive discharge claim is higher than that required to prove a hostile work environment claim. *Brooks*, 229 F.3d at 930 ("Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job."). A plaintiff must at least show some aggravating factors that compelled him or her to quit, such as a continuous pattern of discriminatory treatment. *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1412 (9th Cir. 1996).

Plaintiff points to the same evidence in support of his hostile work environment claim. Given the court's conclusion that Plaintiff's working conditions were not

17

1   "sufficiently permeated with discriminatory intimidation," the court likewise cannot see

2   how a reasonable jury could find that Plaintiff was driven from the workplace.  *See*

3   *Brooks*, 229 F.3d at 930.  For this reason, Plaintiff has not raised a genuine issue as to

4   constructive discharge based on age discrimination.  As such, Plaintiff's claim for

5   constructive discharge fails.

6   **D.  Retaliation**

7   The ADEA similarly protects from retaliation an employee who has opposed age

8   discrimination, or participated in investigations, proceedings, or litigation concerning

9   age discrimination.  29 U.S.C. § 626(d).  Retaliation must be shown by evidence that (1)

10   Plaintiff engaged in a protected activity; (2) Plaintiff was subjected to an adverse action;

11   and (3) there was a causal link between the protected activity and the employer's action.

12   *See Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008); *Xin Liu v. Amway Corp.*, 347 F.3d

13   1125, 1143 (9th Cir. 2003).  As above, Plaintiff may rely on the *McDonnell Douglas*

14   framework at the summary judgment stage beginning with Plaintiff's burden to establish

15   his *prima facie* case.  *Xin Liu*, 347 F.3d at 1143.  Defendant must then articulate a

16   legitimate, non-retaliatory reason for the challenged action.  Plaintiff thereafter must

17   demonstrate that this reason is pretext for retaliation.

18   Plaintiff contends that he engaged in the following "protected" activities: (1) on

19   January 24, 2018, Plaintiff complained to Dr. Wang-Rodriguez and Dr. Hartronft about

20   Dr. Lewis' proctoring plan and his changed schedule; (2) on February 8, 2018, Plaintiff

21   complained to Dr. Hartronft about his personal grievances with Dr. Lewis, that he

22   considered himself a whistleblower, and that he filed a harassment complaint to the

23   Office of Resolution Management; (3) on April 4, 2018, Plaintiff requested FMLA leave;

24   (4) between January and February 2018, Plaintiff "initiated" an EEO complaint against

25   the VA, naming Dr. Lewis as a responding management official; and (5) on April 19,

26   2018, Plaintiff filed a formal EEO complaint for age discrimination, retaliation, and

27   harassment.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

The court finds that Plaintiff's two informal complaints are not protected activities. Although informal complaints to a supervisor can constitute a protected activity, *Ray v. Henderson*, 217 F.3d 1234, 1240, n.4 (9th Cir. 2000), the protected activity must actually be protected under the ADEA statute. *See Stewart v. Wilkie*, No. 2:18-CV-01887-ODW (SKx), 2019 WL 1114866, at *3 (C.D. Cal. Mar. 11, 2019) ("None of Plaintiff's conduct concerns unlawful employment discrimination based on age; as such, it is not protected activity under the ADEA."); *Lalau v. City of Honolulu*, 938 F. Supp. 2d 1000, 1018 (D. Haw. 2013) (noting that plaintiff must identify a protected activity that is "protected by the statutes [plaintiff] sues under"). Here, there is no mention of age-based discrimination, harassment, or retaliation in either of the communications that were sent to Dr. Wang-Rodriguez or Dr. Hartronft. Thus, because the content of Plaintiff's complaints was not about Plaintiff's age, they do not constitute protected activities. Likewise, Plaintiff's decision to take FMLA leave does not constitute a protected activity as a matter of law because the ADEA statute does not protect an employee's right to take a medical leave. *See Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007). Nevertheless, there is no dispute that when Plaintiff "initiated" and subsequently filed an EEO complaint for age-based discrimination, harassment, and retaliation, he engaged in protected activity. As such, Plaintiff can establish the first element of his *prima facie* case.

19
20
21
22

With respect to the second element, there is no dispute that Plaintiff was terminated, which qualifies as an adverse employment action. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). As such, the second element of Plaintiff's prima facie case is satisfied.

23
24
25
26
27

However, Plaintiff has not established the requisite causal connection between his protected activity and his termination. As with Plaintiff's age discrimination claim, here, there is no evidence that the relevant decision-maker involved in Plaintiff's termination, Ms. Brown, knew that Plaintiff filed, let alone "initiated," an EEO complaint. *Brooks*, 1 F. Supp. 3d at 1037 ("In general, if the decision maker does not have knowledge of the

28

19

plaintiff's protected activity, there can be no retaliation for engaging in that activity."). As discussed above, Plaintiff does not offer evidence to show that anyone other than Ms. Brown had authority to decide whether to terminate Plaintiff.  Moreover, Defendant's evidence, which Plaintiff does not contradict, suggests that Ms. Brown conducted her own independent investigation to verify that there were legitimate grounds for Plaintiff's termination.  Thus, even if Dr. Lewis and Dr. Wang-Rodriguez were motivated to terminate Plaintiff for retaliatory reasons, there is no evidence Ms. Brown's decision to terminate Plaintiff was based on anything other than her own independent assessment that Plaintiff had violated the VA's licensing policy by failing to timely renew his medical license.  *See Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 806 (9th Cir. 2009) ("[W]here the evidence shows 'that the final decision-maker made a wholly independent, legitimate decision to discharge the plaintiff, uninfluenced by the retaliatory motives of' Brown, we hold that the neutrality of the decisionmaking process eliminated any 'causal' link to Brown's bias." (internal citations omitted)).

Because Plaintiff has failed to satisfy his *prima facie* case, Plaintiff's retaliation claim under the ADEA fails.

**IV. CONCLUSION**

For the above reasons, the court GRANTS Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated:   March 11, 2022

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

20